WEST BOYLSTON MANUFACTURING COMPANY *vs.* METRO-
POLITAN WATER BOARD.

Worcester.   November 11, 1902. — May 21, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, & HAMMOND, JJ.

*Metropolitan Water Act.   Statute,* Construction.

St. 1895, c. 488, § 4, requiring the metropolitan water board, after taking the waters of the Nashua River, to take all real estate which will be submerged or flooded by the construction of the proposed reservoir, "and all parcels of real estate above the dam of said reservoir used for mill purposes and owned by the owner

of any mill property of which any part will be submerged or flooded by the construction of said reservoir ", does not require the commissioners to take a mill property at Holden above the dam no part of which will be submerged but which is owned by the owner of another mill property at West Boylston six miles away which will be in part submerged. The provision was intended to apply to cases where the land submerged is part of a larger tract or so connected with other property as to form with it one organic whole.

PETITION, filed January 19, 1900, for a writ of mandamus to compel the metropolitan water board to take, under the provisions of St. 1895, c. 488, § 4, a certain mill property of the petitioner at Holden on the Quinapoxet River, a branch of the south branch of the Nashua River, situated six miles above another mill property of the petitioner in West Boylston which will be partly but not wholly submerged by the reservoir to be built under the act, although the property at Holden will not be in any part submerged by the reservoir.

The case came on to be heard before *Knowlton*, J., who at the request of both parties reported it for determination by the full court, a writ of mandamus to issue or the petition to be dismissed as the court might decide.

*C. M. Thayer & H. W. Fowler*, for the petitioner.

*R. A. Stewart*, Assistant Attorney General, for the respondent.

MORTON, J. This is a petition for a writ of mandamus to compel the respondent to take under the provisions of St. 1895, c. 488, § 4, certain mill property belonging to the petitioner and situated in Holden in the county of Worcester on the south branch of the Nashua River above the dam which the respondent is authorized to construct. The act referred to took effect on its passage and at that time the respondent was also the owner of other mill property situated in West Boylston on said stream which will be partially or wholly submerged by the reservoir. The two properties are about six miles apart and lying between them are several mills and mill privileges owned by other persons. The business carried on at West Boylston was no part of and had no connection with the business carried on at Holden, the businesses carried on at the two places being entirely separate and distinct. The only connection between the two properties was that they were both owned by the same owner. The respondent has taken by purchase for the purposes of the act the property of the petitioner situated at West Boylston.

The respondent refused to take the Holden property, and in the deed conveying the West Boylston property it was expressly provided that the acceptance of that deed should not affect in any way the petitioner's right to enforce its claim that the respondent was bound to take the Holden property.

The fundamental question is one of the construction of St. 1895, c. 488, § 4, the particular language under which the petitioner claims being as follows: " Said board shall forthwith, after taking the waters of said Nashua River, take by purchase or otherwise all real estate which will be submerged or flooded, or submerged to an increased depth, by the construction of the proposed reservoir on the Nashua River hereinafter provided for, and all parcels of real estate above the dam of said reservoir used for mill purposes and owned by the owner of any mill property of which any part will be submerged or flooded by the construction of said reservoir, including all the machinery used on such real estate and tenements for operatives."

The petitioner contends that at the time of the taking by the respondent of the West Boylston property, it was the owner of mill property of which a part would be submerged or flooded by the construction of the reservoir, and that therefore the whole of the mill property belonging to it, that in Holden as well as that in West Boylston, should have been taken. But we do not think that this contention is warranted by a reasonable construction of the statute. The object of the statute was to provide for a metropolitan water supply. The act is so entitled. With that end in view the board was authorized to construct a storage reservoir on the Nashua River above the dam of the Lancaster mills. It was contemplated that mill property and other real estate would be submerged or flooded or submerged to an increased depth by reason of the reservoir which was to be thus constructed. And the board was directed to take by purchase or otherwise all parcels of real estate above the dam owned by the owner of any mill property of which any part would be submerged or flooded. It may be doubtful whether this provision does not apply to all real estate whether mill property or not though the general rule of construction is that a relative pronoun is to be referred for its antecedent to that which immediately precedes it.

But however that may be, and notwithstanding the fact that there is in the words " owned by the owner " a suggestion that unity of title is the basis of recovery, we think that it is manifest that it is physical contiguity or an interdependent connection of the parts of the property in the use which is made of it that furnishes the test of the right to compel a taking when a part is submerged or flooded. No good reason can be imagined why the board should be compelled to take property altogether beyond the limits of the proposed reservoir, and that would not be submerged or flooded or affected by it, and which was not in any way connected with property that was submerged or flooded except as it belonged to a person who owned other property that would be submerged or flooded. On the other hand, it is obvious that, where a part of real estate used for mill purposes was submerged or flooded, to confine the taking to the part so submerged or flooded might operate as a serious detriment to the mill owner by depriving him of a part necessary to the convenient and profitable use of the remainder, and the Legislature also might have deemed it necessary and proper in such a case that for sanitary reasons the board should be directed to take, by purchase or otherwise, the whole. It is possible that the board would have power under the concluding sentence of § 4 to take the whole when a part was submerged or flooded. But the question would still remain as to the nature of the connection required between the part and the whole to justify such a taking. In view of the above considerations we cannot doubt that the provision was intended by the Legislature to apply to cases where the part submerged or flooded was a part of a larger tract, or was so connected with other property as to form in connection therewith one organic whole.

This view of the construction to be given to the statute renders it unnecessary to consider other objections urged by the respondent against the maintenance of the petition.

*Petition dismissed.*